# Henick-Lane, Inc. v Hudson Meridian Constr. Group, LLC

## 2024 NY Slip Op 34324(U)

### December 3, 2024

### Supreme Court, Kings County

### Docket Number: Index No. 511022/2019

### Judge: Larry Martin

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

At an IAS Term, Part Comm 10 of the Supreme Court of the State of New York, held in and for the County of Kings, at the Courthouse, at Civic Center, Brooklyn, New York, on the 3rd day of December, 2024.

P R E S E N T :

HON. LARRY D. MARTIN,

                                Justice.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

HENICK-LANE, INC.,

                           Plaintiff,

              - against -                       Index No. 511022/19

HUDSON MERIDIAN CONSTRUCTION GROUP, LLC,
RED APPLE 86 FLEET PLACE DEVELOPMENT LLC
and HARTFORD FIRE INSURANCE COMPANY,

                         Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

VIVID MECHANICAL LLC,

                      Additional Defendant on
                      Counterclaims.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

| The following e-filed papers read herein: | NYSCEF Doc Nos. |
|---|---|

| | | | |
|---|---|---|---|
| Notice of Motion/Order to Show Cause/ | | | |
| Petition/Cross Motion and | | | |
| Affidavits (Affirmations)_____ | 286-316 | 319-329 | 333-361 |
| Opposing Affidavits (Affirmations)_____ | 415-432 | 367-380 | 382-413 |
| Reply Affidavits (Affirmations)_____ | 435-436 | | 439-451 |

Upon the foregoing papers in this action for breach of contract, plaintiff and counterclaim defendant Henick-Lane, Inc. (Henick-Lane), an HVAC contractor, and its subcontractor, additional defendant on the counterclaims Vivid Mechanical LLC (Vivid) (collectively, the Henick Counterclaim Defendants), collectively move (in motion sequence [mot. seq.] nine) for an order, pursuant to CPLR 3212, granting them partial

[* 1]

summary judgment dismissing the "counterclaim damages" for purely economic losses, including but not limited to "rental loss due to leaks" and "leak costs not covered by insurance" sought by Red Apple 86 Fleet Place Development LLC (Red Apple) (NYSCEF Doc No. 286).

Defendant Hudson Meridian Construction Group, LLC (Hudson) moves (in mot. seq. 10) for an order, pursuant to CPLR 3212, granting it summary judgment dismissing the complaint as against it (NYSCEF Doc No. 319).

Defendants Red Apple and its surety, Hartford Fire Insurance Company (Hartford), collectively move (in mot. seq. 11) for an order, pursuant to CPLR 3212, awarding Red Apple partial summary judgment: (1) on its counterclaims for contractual indemnification against Henick-Lane and Vivid,[1] and (2) dismissing the second and third causes of action (NYSCEF Doc No. 333).

## Background

On May 16, 2019, Henick-Lane commenced this action for breach of contract and enforcement of a Mechanic's Lien for certain HVAC work that it performed at the construction project known as "The Eagle," a new 32-story, mixed-use building and development with 440 residential units, parking facilities and retail space (the Building) at 86 Fleet Place in Brooklyn (the Project).

---

[1] This is Red Apple's second, successive summary judgment motion regarding its counterclaims for indemnification, the first of which was denied based on disputed issues of fact (*supra* at 4-5).

2

The complaint alleges that on or about October 22, 2015, Henick-Lane entered into the Trade Contract "with Hudson to perform certain work and furnish certain labor and materials, including the provision and installation of heating, ventilation, air conditioning, ductwork and piping (the 'Work') at the Project . . ." (NYSCEF Doc No. 1 at ¶ 8). Essentially, Henick-Lane's complaint alleges that Red Apple, the developer and owner of the Building, has wrongfully withheld final payment in the amount of $952,476.54 for the Work performed, completed and accepted by Red Apple on the Project (*id.* at ¶¶ 11-14). In addition to Red Apple, Henick-Lane seeks recourse against Hudson, the construction manager on the Project, whose responsibilities included entering into contracts as agent for Red Apple. Notably, the complaint explicitly alleges that "Hudson served *as agent for its disclosed principal* Red Apple in relation to the Project . . ." (*id.* at ¶ 7 [emphasis added]).

The complaint asserts the following five causes of action for: (1) breach of the Trade Contract against Red Apple and Hudson; (2) alternatively, quantum meruit against Red Apple and Hudson; (3) violation of General Business Law (GBL) § 756 (Prompt Payment Act) against Red Apple; (4) violation of GBL § 756 against Hudson; and (5) foreclosure of Henick-Lane's Mechanic's Lien against Red Apple and Hartford, as surety.

On June 19, 2019, prior to any discovery, Hudson made a pre-answer motion to dismiss the complaint on the ground that it entered into the Trade Contract with Henick-Lane solely as an agent for Red Apple, a disclosed principal (NYSCEF Doc Nos. 8-13). By a December 11, 2019 order, this court denied Hudson's motion (NYSCEF Doc No. 33).

3

[* 3]

On July 31, 2019, Red Apple and Hartford collectively answered the complaint, denied the material allegations therein and asserted affirmative defenses, including that "Henick[-Lane] has been paid in full under its agreement with Hudson . . ." and its "claims are subject to set-off, as set forth in the contract with Hudson, based upon damages caused by Henick[-Lane]" (NYSCEF Doc No. 20). On August 19, 2019, Red Apple and Hartford amended their answer to assert three counterclaims for: (1) Henick-Lane's breach of the October 22, 2015 Trade Contract by improperly installing packaged thermal air conditioner (PTAC) units in the Building (NYSCEF Doc No. 27 at ¶¶ 66-93); (2) breach of Henick-Lane's indemnity obligation under the Trade Contract (*id.* at ¶¶ 94-100); and (3) indemnification from Vivid as Red Apple was an intended third-party beneficiary under the subcontract (*id.* at ¶¶ 101-107).

On September 30, 2019, the Henick Counterclaim Defendants collectively responded to Red Apple and Hartford's counterclaims (NYSCEF Doc Nos. 30 and 32).

On December 30, 2019, Hudson answered the complaint, denied the material allegations therein and asserted affirmative defenses, including that Hudson is not liable to Henick-Lane for claims based on alleged non-payment because Hudson acted solely as an agent for Red Apple, a disclosed principal (NYSCEF Doc No. 35).

### *Red Apple's Prior Partial Summary Judgment Motion*

Notably, on March 10, 2020, Red Apple moved (in mot. seq. two) for partial summary judgment on its counterclaims for indemnification (NYSCEF Doc Nos. 37-56). By a March 22, 2022 decision and order, this court denied Red Apple's partial summary

4

judgment motion because there were disputed factual issues, including whether or not the Trade Contract includes indemnification coverage for Red Apple's alleged economic loss (NYSCEF Doc No. 153 at 4). Specifically, this court held that:

> "[i]t appears to be undisputed that the Trade Contract does not include 'economic loss' indemnification coverage, however while defendants allege that such coverage was 'expressly excluded,' no such exclusion clause has been referenced, thus *leaving the issue of such coverage one of many factual issues in dispute.* Moreover, while defendants maintain that Red Apple has not provided any documentary support for its alleged 'extensive property damage and unsafe conditions,' none of the parties have focused their briefs on which damages were expressly or implicitly covered or excluded by language in the settlements" (*id.* [emphasis added]).

On April 28, 2022, Red Apple appealed from the court's denial of its summary judgment motion (NYSCEF Doc No. 155), but the appeal was dismissed for failure to perfect.

On February 26, 2024, Henick-Lane filed a Note of Issue and Certificate of Readiness for Trial indicating that discovery was completed (NYSCEF Doc No. 281).

***The Henick Counterclaim Defendants'***
***Partial Summary Judgment Motion***

The Henick Counterclaim Defendants move for partial summary judgment dismissing Red Apple's "counterclaim damages" for purely economic losses, including "rental loss due to leaks" and "leak costs not covered by insurance" (NYSCEF Doc No. 286). They submit an affidavit from Ernest I. Henick (Henick), CEO of Henick-Lane and principal of Vivid, who attests that "[t]he Trade Contract was the subject of substantial contract negotiations" (NYSCEF Doc No. 315 at ¶ 9). Specifically, Henick asserts that:

5

"[o]f critical significance, Henick-Lane required, and Hudson and Red Apple accepted, that 'economic loss' be removed from the scope of Henick-Lane's indemnification obligations, and that the clause [Section 20.1] be modified to clarify that the indemnification clause was limited to third-party claims for 'personal injury, wrongful death, and property damage' claims. All Henick-Lane edits and comments to the indemnification clause were accepted and incorporated in the final, signed Trade Contract.

\* \* \*

"Upon information and belief, Red Apple refuses to pay Henick-Lane's final invoice based upon a claim for alleged economic losses, including lost rental income, which losses Henick-Lane is not obligated to pay under the terms of the final, negotiated, and signed Trade Contract" (*id.* at ¶¶ 9 and 20).

The Henick Counterclaim Defendants also submit an affirmation from their counsel, who asserts that the Trade Contract was the subject of substantial negotiations lasting for four months (according to the deposition testimony of Jason Ribeiro),[2] and that Henick-Lane "had many comments" during the negotiations (according to the deposition testimony of Maria Rosenfeld)[3] (NYSCEF Doc No. 287 at ¶ 6). Notably, counsel submits a final executed copy of the Trade Contract that is "red-lined" to reflect the ultimate changes made to the indemnification provision in Section 20.1 after negotiations by *removing any references to "economic loss"* and specifically limiting indemnification for "personal injury, wrongful death or property damage . . ." (NYSCEF Doc No. 288 at § 20.1).

---

[2] *See* NYSCEF Doc No. 306 at 49:11-21.
[3] *See* NYSCEF Doc No. 307 at 66:4-10.

6

[* 6]

***Red Apple and Hartford's***
***Partial Summary Judgment Motion***

Red Apple moves, once again, for partial summary judgment on its counterclaims and for dismissal of the second and third causes of action asserted against it in the complaint (NYSCEF Doc No. 333). Hartford, Red Apple's surety, joins in the second partial summary judgment motion.

Red Apple submits an affidavit from Robert Zorn (Zorn), its Executive Vice President, who describes the deficient Work and subsequent remediation performed by Henick-Lane and Vivid, which resulted in significant water damage to the Building (NYSCEF Doc No. 334 at ¶¶ 10-18). Zorn further attests that "[a]s a result of the damage caused by Henick[-Lane] and Vivid, which exceeded the Trade Contract balance, Red Apple properly withheld all further payments pursuant to Section 7.7.5 of the Trade Contract"[4] (*id.* at ¶ 20).

Zorn asserts that "in breach of the Trade Contract, (i) Henick and Vivid failed to provide insurance coverage for the property damage caused by Henick and/or Vivid's Work under Article 19 of the Trade Contract and/or (ii) indemnify Red Apple for its damages under Article 20 of the Trade Contract" (*id.*). Notably, Zorn admits that Red Apple only seeks an award of $291,180.71, plus attorneys' fees on its counterclaims for

---

[4] Section 7.7.5 of the Trade Contract provides that "Construction Manager may withhold payment of an application for payment in whole or in part, for one or more of the following reasons: . . . damage to Owner, Construction Manager or Other Trade Contractor caused by Trade Contractor . . ." (NYSCEF Doc No. 322 [Trade Contract] at § 7.7.5).

7

property damage, and that it will later seek at trial economic "damages in the amount of $2,441,236 . . . related to lost rent . . ." and the closure of its leasing office (*id.* at ¶ 23).

Regarding plaintiff's third cause of action for violation of GBL § 756, the Prompt Payment Act, Zorn alleges that "[a]t no time did Henick[-Lane] seek to pursue any claim under the Prompt Payment Act" and "Henick[-Lane] did not demand arbitration with the American Arbitration Association[,]" as required under the Prompt Payment Act (*id.* at ¶ 42). Zorn attests that "[e]ven if Henick[-Lane] submitted an invoice for final payment on May 31, 2018, it was not a proper invoice under the Trade Contract" because "[p]ursuant to Section 7.8.1 (a) of the Trade Contract, among other sections, retainage was not due until Henick's 'one hundred percent (100%) completion of [its] work'" and "Henick was not completed with its Work on May 31, 2018 to be entitled to final payment" (*id.* at ¶ 44). Zorn submits a May 31, 2018 email from Hudson to Henick-Lane documenting that there were 144 items left on the Commissioning Log that were not yet completed as of May 31, 2018 (*id.* at ¶ 45; *see also* NYSCEF Doc No. 352). Zorn also submits a July 16, 2018 email from Henick-Lane's employee, Thomas Meyer, acknowledging that the work was not yet complete (NYSCEF Doc No. 334 at ¶ 46; *see also* NYSCEF Doc No. 353). Zorn asserts that the Prompt Payment Act is inapplicable because "in person meetings and email correspondence were exchanged advising Henick of Red Apple's withholdings of payment" based on the defective Work (NYSCEF Doc No. 334 at ¶ 48).

Red Apple also submits a memorandum of law asserting that dismissal of the second cause of action for quantum meruit is warranted because "[i]t is well-settled that a cause of

8

action for *quantum meruit* is precluded by the existence of a valid written contract between the parties" (NYSCEF Doc No. 362 at 22).

### *Henick-Lane and Vivid's Opposition*

The Henick Counterclaim Defendants oppose Red Apple's partial summary judgment motion by submitting an affidavit from Henick, who acknowledges that "[s]hortly after the [temporary certificate or occupancy] was issued [on December 29, 2017], four different water events occurred in the piping installed by Henick Parties, which resulted in various degrees of water damage to the lower half of the building" (NYSCEF Doc No. 412 at ¶ 14). Henick, however, disputes the scope of such damages to the Building and asserts that Henick-Lane did not receive notice, as required under the Trade Contract, before Red Apple had the property damage repaired by its own contractors:

> "[f]ollowing these water events, all PTAC units in the Building were tested. During this testing, there were minor bleeder leaks which were controlled, identified, repaired, and did not cause extensive property damage or unsafe conditions.

> "According to Robert Zorn's affidavit, Cosentini billed hundreds of man-hours for alleged 'engineering services' regarding the PTAC units that he claims were not reimbursed by Red Apple's insurance carrier. Upon review of the records attached to Red Apple's motion, much of the time billed was unnecessary given the actual work performed onsite and, therefore, inflated, and Henick-Lane is not responsible for such excessive, claimed expenditures.

> "Red Apple also never gave Henick-Lane the written notice required by the Trade Contract before unilaterally engaging Maragos Painting LLC, Cassaway Contracting Corp., Over the Edge Building Corp. Doma Source, LLC, and Friendly Floor

9

[* 9]

Covering Inc. to perform alleged remediation and repairs that Red Apple claims is associated with Henick-Lane's work.

"Based on the records attached to Red Apple's motion papers, Hudson, as agent for Red Apple, in violation of sections 13.3 and 13.4 of the Trade Contract, engaged these entities to perform repair work instead of providing Henick-Lane with written notice of the alleged damages (i.e. flooring, sheet rock, painting, etc.) and the opportunity to perform or engage others to perform the claimed repair work" (*id.* at ¶¶ 16-19).

The Henick Counterclaim Defendants also submit a memorandum of law in opposition to Red Apple's partial summary judgment motion arguing that under Vivid's subcontract, "Red Apple is not entitled to indemnity for direct breach of contract matters against Vivid, but rather third-party actions or proceedings filed against Red Apple for damages arising from Vivid's work or negligence" (NYSCEF Doc No. 414 at 17).

### Hudson's Summary Judgment Motion

Hudson moves for summary judgment dismissing the complaint on the ground that it was merely an agent for a disclosed principal, Red Apple (NYSCEF Doc No. 319). Hudson submits an attorney affirmation arguing that:

"[t]he causes of action asserted by Plaintiff Henick-Lane . . . against Hudson must be dismissed because they all arise from Henick's claim that it is owed $952,476 for construction work it performed pursuant to a trade contract with Hudson . . . in which Hudson was identified *as the agent for a disclosed principal*, Defendant Red Apple . . ." (NYSCEF Doc No. 320 at ¶ 2 [emphasis added]).

Defense counsel asserts that "Hudson entered into a Trade Contract with Henick[-Lane] in August 2015" which "provided that Henick[-Lane] was to perform plumbing, heating and

10

cooling work at the Project" (*id.* at ¶ 16). Defense counsel asserts that "[b]oth the first page of the Trade Contract and the signature page described Hudson "as agent for Red Apple . . ." and the Trade Contract references Hudson as "Owner's agent" in Sections 1.1 and 1.4 (*id.* at ¶¶ 17-18). Defense counsel also references Section 7.12 of the Trade Contract (*id.* at ¶ 19), which provides that Henick-Lane seeks payment for the work from the Owner, rather than from Hudson, the Construction Manager:

> "Construction Manager is acting as an agent of Owner, and therefore, to the extent permitted by applicable law, a condition precedent to payment by Construction Manager is the receipt of funds by Construction Manager from Owner designated for payment to Trade Contractor. *Trade Contractor acknowledges it is relying solely on the credit of Owner and not the credit of Construction Manager for payment for the Work performed by Trade Contractor*" (emphasis added) (NYSCEF Doc No. 322 [Trade Contract] at § 7.12).

Defense counsel also references the deposition testimony of Ernest I. Henick, the President of Henick-Lane, who acknowledged that Henick-Lane does not seek payment from Hudson (NYSCEF Doc No. 320 at ¶ 20; *see also* NYSCEF Doc No. 326 at 160:2-8).

**Henick-Lane's Opposition**

Henick-Lane opposes Hudson's summary judgment motion based on an attorney affirmation arguing that, under the Trade Contract, Hudson, as Construction Manager, had "direction, control, and authority over Henick-Lane's work on the Project" and "had the right to withhold payment . . ." (NYSCEF Doc No. 367 at ¶¶ 15-24). Despite the provision in Section 7.12 of the Trade Contract explicitly stating that "Hudson is acting as agent" of Red Apple and Henick-Lane acknowledges it is relying only on Red Apple for payment,

11

[* 11]

counsel argues that Section 7.14[5] of "the Trade Contract provided Henick-Lane with the right to pursue claims against Hudson for nonpayment by Red Apple . . ." (*id.* at ¶ 25).

## Discussion

Summary judgment is a drastic remedy that deprives a litigant of his or her day in court and should, thus, only be employed when there is no doubt as to the absence of triable issues of material fact (*Kolivas v Kirchoff*, 14 AD3d 493 [2d Dept 2005]). "The proponent of a motion for summary judgment must make a prima facie showing of entitlement to judgment, as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact" (*Manicone v City of New York*, 75 AD3d 535, 537 [2d Dept 2010], quoting *Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]; *see also Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]; *Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]). If it is determined that the movant has made a prima facie showing of entitlement to summary judgment, "the burden shifts to the opposing party to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which require a trial of the action" (*Garnham & Han Real Estate Brokers v Oppenheimer*, 148 AD2d 493 [2d Dept 1989]).

---

[5] Section 7.14 of the Trade Contract provides that "[i]n the event Construction Manager [Hudson] does not commence an action against Owner [Red Apple] for non-payment, Trade Contractor [Henick-Lane] shall exhaust all remedies against the real property on which the Project is located as set forth in any applicable lien law prior to pursuing any claim against Contractor or its surety, if any, arising out of non-payment by Owner. Nothing herein shall preclude Trade Contractor from asserting breach of contract and other claims for relief in any mechanic's lien foreclosure action it commences (NYSCEF Doc Nos. 2 and 288 at § 7.14).

12

[* 12]

### *Hudson's Summary Judgment Motion*

"An agent who acts on behalf of a disclosed principal will generally not be liable for a breach of contract" (*Stonhard v Blue Ridge Farms, LLC*, 114 AD3d 757, 758 [2d Dept 2014] quoting *Matter of Anderson v PODS, Inc.*, 70 AD3d 820, 821 [2d Dept 2010]). "A principal is considered to be 'disclosed' if, at the time of a transaction conducted by an agent, the other party to the contract had notice that the agent was acting for the principal and of the principal's identity" (*Matter of Anderson v PODS, Inc.*, 70 AD3d at 821).

Here, Hudson has satisfied its burden of establishing the disclosure of the agency relationship in the Trade Contract between Hudson and Henick-Lane, thereby warranting dismissal of the complaint as against Hudson. The Trade Contract unambiguously and repeatedly identified Hudson as Red Apple's agent on the first and last pages and in Sections 1.1 and 1.4 (NYSCEDF Doc No. 322 at §§ 1.1 and 1.4). Importantly, the Trade Contract explicitly provides in Section 7.12 that "Trade Contractor [Henick-Lane] acknowledges it is relying solely on the credit of Owner [Red Apple] *and not the credit of Construction Manager* [Hudson] for payment for the Work performed by Trade Contractor" (emphasis added) (*id.* at § 7.12 [emphasis added]). Contrary to Henick-Lane's assertion, Section 7.14 of the Trade Contract does not provide that it could pursue claims against Hudson for nonpayment by its disclosed principal, Red Apple. The language in Section 7.12 of the Trade Contract, together with Henick's deposition testimony that he is not seeking payment from Hudson for the Work performed, warrants summary judgment dismissing the complaint as against Hudson.

13

### *The Partial Summary Judgment Motions*
### *Regarding Red Apple's Counterclaim Damages*

This court previously denied Red Apple's first partial summary judgment motion on its counterclaims because there were issues of fact regarding indemnification coverage for economic loss in the Trade Contract (NYSCEF Doc No. 153 at 4). Deposition testimony regarding the parties' negotiation of the Trade Contract, together with a red-lined, final version of the Trade Contract reflecting the parties' exclusion of coverage for purely economic losses sustained by Red Apple has resolved those issues of fact.

Section 20.1, the indemnification provision in the Trade Contract, unambiguously provides, in relevant part, that Henick-Lane shall indemnify Red Apple for "personal injury, wrongful death or property damage . . .":

> ". . . from and against all liability, damage, loss, claims, demands and actions of any nature whatsoever which arise out of or are connected with or are claimed to arise out of or be connected with *personal injury, wrongful death or property damage* in, the performance of Work by the Trade Contractors, or Contractor or from any act or omission of the Trade Contractor . . ." (NYSCEF Doc No. 288 at § 20.1 [emphasis added]).

Importantly, the final, executed version of the Trade Contract annexed to the complaint (NYSCEF Doc No. 2) and in the record before the court (NYSCEF Doc No. 288) is a red-lined version of the Trade Contract reflecting that language regarding indemnification for "economic losses" was specifically stricken from Section 20.1 during the parties' negotiations, which was extensive and took place over a period of four months. This is sufficient documentary support evidencing that the parties intended that Red Apple would

14

not be indemnified by Henick-Lane for purely economic losses. Consequently, Red Apple's counterclaims are dismissed to the extent they seek purely economic damages, including "rental loss due to leaks" or any damages resulting from the closure of Red Apple's rental office.

However, Henick has admitted that "four different water events occurred in the piping installed by [the] Henick Parties, which resulted in various degrees of water damage to the lower half of the building" (NYSCEF Doc No. 412 at ¶ 14). Red Apple has amply demonstrated that it incurred $291,180.71 in property damage related to the water damage at the Building, which will operate as a set-off of the amount that Red Apple allegedly owes Henick-Lane under the Trade Contract. Red Apple has failed to demonstrate its right to contractual indemnification from Vivid, a subcontractor of Hanick-Lane with whom Red Apple lacks privity.

### The Second and Third Causes of Action

"Where, as here, there is an existing contract between the parties covering the dispute in issue there can be no recovery in quantum meruit" (*Tako Holdings, Inc. v Tillman*, 272 AD2d 394, 396 [2d Dept 2000]). Because this dispute is governed by the Trade Contract, an actual written contract governing Henick-Lane's Work on the Project and the terms of payment by Red Apple, Henick-Lane's second cause of action in the complaint for recovery under a theory of quantum meruit is dismissed, as a matter of law.

Red Apple has also demonstrated that dismissal of the third cause of action under GBL § 756, the Prompt Payment Act, is warranted. The Prompt Payment Act, which

15

requires an owner to approve or reject an invoice from a contractor within 12 business days, is inapplicable here, since defects in the Henick Counterclaim Defendants' Work was detected prior to 100% completion of the Work and submission of a final invoice under the Trade Contract. Accordingly, it is hereby

**ORDERED** that the Henick Counterclaim Defendants' partial summary judgment motion (mot. seq. nine) is granted and Red Apple's counterclaims for indemnification for purely economic losses, including "rental loss due to leaks," and closure of its rental office are dismissed; and it is further

**ORDERED** that Hudson's summary judgment motion (mot. seq. 10) is granted, pursuant to CPLR 3212, and the complaint is dismissed as against Hudson; and it is further

**ORDERED** that Red Apple and Hartford's partial summary judgment motion (in mot. seq. 11) is only granted to the extent that: (1) Red Apple is entitled to an award of $291,180.71 on its counterclaim against Henick-Lane for contractual indemnification, pursuant to Section 20.1 of the Trade Contract, for property damage to the Building, which will be applied as a set-off to any judgment awarded to Henick-Lane on its first cause of action for payments owed under the Trade Contract, and (2) the second and third causes of action asserted in the complaint as against Red Apple are hereby dismissed; the motion is otherwise denied. The action is severed and the caption of this action amended accordingly

16

[* 16]

to reflect dismissal of the complaint as against Hudson.

This constitutes the decision and order of the court.

E N T E R,

J. S. C.

HON. LARRY MARTIN
JUSTICE OF THE SUPREME COURT

17